## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2020, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy McNett, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 18, 2020 <br><br> Court of Appeals Case No. 20A-CR-799 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Andrew R. Hopper, Judge <br><br> Trial Court Cause No. 48C03-1907-F4-1669 |

**May, Judge.**

[1] Jeremy McNett appeals following his conviction of Level 4 felony child molesting.[1] McNett argues his conviction should be reversed because the trial court erred by admitting into evidence statements McNett made at an interrogation when no videotape of the interrogation was available. McNett also asserts the trial court abused its discretion by imposing a ten-year sentence and the sentence is inappropriate in light of the nature of his offense and his character. We affirm.

## Facts and Procedural History

[2] In June and July of 2019, eleven-year-old J.R. divided her time between her mother's house and her father's house. McNett was married to J.R.'s mother, and their union produced two sons who, in July 2019, were four years old and three months old. J.R.'s mother worked from 4:00 p.m. to midnight, and during those hours J.R. was at home with McNett and her half-brothers. On multiple occasions during those months, when J.R.'s mother was at work, McNett would lay a couple of inches behind J.R. on the couch or bed, put his hand down her pants, and hold her butt "down towards the bottom" by her leg for fifteen or twenty minutes. (Tr. Vol. I at 87.) McNett did not say anything to J.R. while he was touching her; nor would McNett move his hand around or

---

[1] Ind. Code § 35-42-4-3(b).

do anything else while touching J.R.  The touching would end when J.R. would get up to take care of her brothers.

[3]     In July 2019, J.R. told her stepmom what was happening because she was scared and "[v]ery worried." (*Id.* at 78.)  J.R. went to Kids Talk to be interviewed by someone from the Department of Child Services.  Officer Alexander Wagner of the Chesterfield Police Department watched the Kids Talk interview of J.R. and, based thereon, began a criminal investigation by speaking with McNett.  Officer Wagner drove McNett to the police department to conduct the interview.  McNett received *Miranda*[2] warnings, signed a waiver, and was interviewed.  McNett admitted to Officer Wagner that he cuddled with J.R. as a way of "showing his affection to her as a father [and] said that he would just put his hands down her pants when they were cuddling in the inside of her waistband so that they wouldn't slip." (*Id.* at 113.)  As a further attempt at clarification, McNett said he had his hand in J.R.'s pants "kinda like you would do with your wife or girlfriend." (*Id.* at 114.)

[4]     The State charged McNett with one count of Level 4 felony child molesting. The court ordered the State to turn over recordings from McNett's interview by police.  On January 18, 2020, McNett filed a motion in limine to exclude any statements McNett made to Officer Wagner during his police interrogation because the State had not produced a recording of the interrogation.  The trial

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), *reh'g denied*.

court denied McNett's motion in limine and admitted Officer Wagner's testimony about the interrogation during McNett's bench trial. The court found McNett guilty, entered conviction of the Level 4 felony, and imposed a ten-year sentence.

# Discussion and Decision

## 1. Admission of Evidence

[5] McNett first challenges the trial court's admission into evidence of Officer Wagner's testimony about McNett's statements during the interview at the Chesterfield police station. We review a trial court's decision to admit evidence for an abuse of discretion, which occurs if a decision is against the logic and effect of the facts and circumstances that were before the court. *Fairbanks v. State*, 119 N.E.3d 564, 567-68 (Ind. 2019), *cert. denied*, 140 S. Ct. 198 (2019). If, however, the "evidentiary ruling turned on a purely legal, threshold question . . . [we] review that aspect of the ruling de novo." *Id*. at 567.

[6] McNett asserts statements from his interview should have been inadmissible under Indiana Evidence Rule 617(a) because the State failed to make available an electronic recording of Officer Wagner's interview of McNett. The State acknowledges Rule 617(a) required an electronic recording be produced of McNett's custodial interrogation at the police station, but it asserts Officer Wagner's testimony about the interview was nevertheless admissible because of the exception provided in subsection (a)(3) of Rule 617. The Rule provides in pertinent part:

(a) In a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial, except upon clear and convincing proof of any one of the following:

* * * * *

(3) The law enforcement officers conducting the Custodial Interrogation in good faith failed to make an Electronic Recording because the officers inadvertently failed to operate the recording equipment properly, or without the knowledge of any of said officers the recording equipment malfunctioned or stopped operating . . . .

To support its assertion that Officer Wagner's testimony was admissible at trial under exception (a)(3), the State cites Officer Wagner's testimony from the hearing on McNett's motion in limine:

Q      And did you conduct a, uh, interrogation of the Defendant, Jeremy McNett?

A      Yes.

Q      What, if anything, did you do, um, as far as recording the interrogation?

A      Uh, before I started the interrogation and before Miranda was read, I went into the room where the device is located, I hit the record button. I ensured that on the screen, the TV that's in there that records it, that it showed that it was recording. And then I conducted the interrogation.

Q      So, this was, the interrogation was done at the Chesterfield Police Department?

A      Yes, ma'am.

Q      And, um, all of that equipment is in the same room?

A      Yes. It's in a separate, it's not in the same room with the interrogation or where that's at.  It's next to it.  Where somebody can sit in and watch.

Q      I g- my question, I guess, would be the recording equipment as well as the storage of those –

A      Yes.

Q      --recordings are in the same room?

A      Yes, ma'am.

Q      Is it on the same device?

A      Yes.

Q      And how many times had you done interrogations and recorded that, those interrogations?

A      Numerous times over the past five (5) years.

Q      And, um, you did it the same way every time?

A      Yes.

Q       And as far as you knew, had the equipment worked during your interrogation?

A       Yes, ma'am.

Q       At some point, did you go to make a copy of the interview?

A       Yes . . . .

                              * * * * *

Q       And when that attempt was made, um, what, if anything, did you see or discover about that interview?

A       That there were several months where there were no interviews or interrogations recorded on the system.

Q       And one of those months would be July of 2019?

A       Yes, ma'am.

Q       And so somewhere between your operation of the equipment and your attempt to burn the interview to give to the State, um, something had malfunctioned?

A       Yes, ma'am.

                              * * * * *

Q       You don't know how that happened?

A       No, ma'am.

Q       But as far as you know when you did the recording you
had done this several times and you did it as you had done?

A       Yes.

Q       And you did the proper checks to make sure it was
recording at that time?

A       Yes.

(Tr. Vol. I at 57-61.)

In addition, Officer Wagner testified as follows at trial:

Q       Now, uh, regarding that recording equipment, we had a
hearing earlier.  Um, as far as you knew at that time, it was
recording properly?

A       Yes, ma'am.

Q       And at some point in time, you went to access the video?

A       Yes.

Q       And were you able to access the video?

A       No.

Q       Do you have any idea why the video was missing?

A       I do not.

Q       And you had IT personnel attempt to recover the video.

A       Yes, ma'am.

Q       And was it recovered?

A       No.

(*Id*. at 109.)

Officer Wagner's testimony demonstrates that he "in good faith failed to make an Electronic Recording," Evid. R. 617(a)(3), because without his knowledge "the recording equipment malfunctioned or stopped operating." *Id*. He operated the recording equipment in the same manner that he had hundreds of other times, he checked the screen to ensure the recording had begun, and he does not know why the recording was not saved on the system. This testimony was sufficient to meet the requirements of the Rule's exception, such that the trial court did not abuse its discretion in admitting Officer Wagner's testimony.[3]

---

[3] McNett also argues the State should have been required to

> call the IT person or persons used by the Chesterfield police department to establish the cause of the loss of the recording of the interview or what efforts were made to recover the record or why a backup copy was not maintained or the qualifications of the IT people the department uses.

(Appellant's Br. at 13.) However, the language of the Rule 617's exception does not require the State to demonstrate the origin of the malfunction of the equipment and, as our Indiana Supreme Court has explained, "Rule 617 is not a constitutional requirement or a prophylactic rule meant to enforce the Constitution; rather, it is a rule of judicial administration." *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018).

*See Cherry v. State*, 57 N.E.3d 867, 876 (Ind. Ct. App. 2016) (exception applied where officer followed instructions for producing a recording, but the recording was missing), *trans. denied*.

## 2. Sentencing Discretion

McNett also asserts the trial court abused its sentencing discretion when imposing a ten-year sentence for Level 4 felony child molesting.  Sentencing decisions rest within the sound discretion of the trial court, and we review such decisions for an abuse of discretion.  *Hudson v. State*, 135 N.E.3d 973, 979 (Ind. Ct. App. 2019).  "An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id*.  For example, a trial court may abuse its discretion by:

> (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law.

*Id*.  Nonetheless, the trial court is not required to accept the defendant's arguments regarding what constitutes a mitigating factor or assign proposed mitigating factors the same weight as the defendant.  *Flickner v. State*, 908

We accordingly reject McNett's invitation to place additional obligations on the State to meet the burden for admission of Officer Wagner's testimony about his custodial interrogation of McNett.

N.E.2d 270, 273 (Ind. Ct. App. 2009). "In cases where the trial court abused its discretion, we will remand for resentencing only 'if we cannot say with confidence that the trial court would have imposed the same sentence if it had properly considered reasons that enjoy support in the record.'" *Bryant v. State*, 959 N.E.2d 315, 322 (Ind. Ct. App. 2011) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007)).

[11] McNett argues the trial court must have relied on improper aggravators to impose his ten-year sentence. McNett was convicted of a Level 4 felony. "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-5.5. The trial court did not find any mitigating factors, but it found multiple aggravators:

> The Court does find the following aggravators and mitigators. Uh, as far as criminal history, that has been clarified on the record today that the Defendant has one (1) prior misdemeanor conviction. And that is a very minor criminal history but a criminal history none the less. This is not Mr. McNett's first encounter with law enforcement. Multiple prior arrests and a prior conviction. The victim in this offense was less than twelve (12) years of age at the time of the offense and Mr. McNett has violated that position of trust. This was someone that looked to you as a father figure, relied on you and someone that you were supposed to keep safe. And you didn't do that. It's that broken relationship and taking advantage of that trust that you gained by having that relationship with the victim that makes this offense an egregious one. As far as mitigation, um, the Court doesn't find any mitigating factors. So, this aggravation does outweigh the mitigation here.

(Tr. Vol. I at 167.)

[12] McNett asserts the trial court erred by noting his arrests without convictions because arrests "may not be properly considered as evidence of criminal history." (Appellant's Br. at 19) (quoting *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005)). While McNett is correct that arrests are not criminal history, we do not read the court's statement to indicate the court considered his arrests as part of his criminal history, because the court stated McNett "has one (1) prior misdemeanor conviction. And that is a very minor criminal history." (Tr. Vol. I at 167.) Instead, we read the court's reference to McNett's arrests as an aggravator separate from McNett's "very minor" criminal history, (*id.*), and we find no error therein as McNett had twice been provided leniency by a judicial system that allowed him to have charges dismissed if he successfully completed diversion program requirements. *See Cotto*, 829 N.E.2d at 526 ("[A] record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State. Such information may be relevant to the trial court's assessment of the defendant's character" and the risk he will re-offend.) (internal citation omitted).

[13] McNett next argues the trial court improperly found an aggravator in J.R.'s age because age was an element of the offense and the trial court did not enter any "particularized circumstances" to justify the specific finding. (Appellant's Br. at 19) (quoting *McCoy v. State*, 96 N.E.3d 95, 99 (Ind. Ct. App. 2018)). We agree with McNett that the finding of J.R.'s age as an aggravator without a statement

of particularized circumstances is improper. *See McCoy*, 96 N.E.3d at 99 (holding "under-twelve aggravator is improper" when court failed to state any particularized circumstances).

Nevertheless, we need not remand for resentencing when, as here, the court made clear it believed McNett's crime was "an egregious one" because of McNett's violation of his position of trust. (Tr. Vol. I at 167.) As the court noted, J.R. looked at McNett as a father-figure. He had lived with J.R. and her mother for more than half of J.R.'s life, and he had been entrusted with the responsibility to keep J.R. safe, along with the two sons born to McNett and J.R.'s mother, while J.R.'s mother was at work. Instead, he touched J.R. inappropriately on multiple occasions. McNett asserts his violation of a position of trust is inadequate to justify his enhanced sentence. (See Appellant's Br. at 20.) We disagree. *See Middlebrook v. State*, 593 N.E.2d 212, 214 (Ind. Ct. App. 1992) ("A reasonable person could conclude that the imposition of the maximum sentence" is appropriate for molesting of daughter and stepdaughter.). *See also Singer v. State*, 674 N.E.2d 11, 14 (Ind. Ct. App. 1996) ("Abusing a 'position of trust' is, by itself, a valid aggravator which supports the maximum enhancement of a sentence for child molesting.").

## 3. Inappropriate Sentence

Finally, McNett claims his sentence is inappropriate. We may revise a sentence if it "is inappropriate in light of the nature of the offense and the character of the offender." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008)

(citing Ind. Appellate Rule 7(B)). We consider the aggravators and mitigators found by the trial court and also any other factors appearing in the record. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), *trans. denied*. Our determination of appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008). The appellant must demonstrate his sentence is inappropriate. *Baumholser*, 62 N.E.3d at 418.

[16] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. McNett was convicted of Level 4 felony child molesting. The advisory sentence for a Level 4 felony is six years, and the range is two to twelve years. Ind. Code § 35-50-2-5.5. The trial court ordered McNett to serve a ten-year sentence, which is four years above the advisory sentence and two years below the maximum sentence.

[17] McNett asserts there "was nothing in this case which made it more serious than any other case involving touching a girl with whom the defendant is in a position of trust." (Appellant's Br. at 22.) However, McNett was not convicted of a crime for which an element was the defendant being in a position of trust. *See* Ind. Code § 35-42-4-3(b) (defining Level 4 felony child molesting as a defendant, with a child under age 14, performing or submitting to fondling or touching of the adult or child, with the intent to arouse or satisfy the sexual desires of the child or the adult). As the trial court noted, McNett's violation of

the position of trust that he had with J.R., who had been McNett's stepdaughter for more than half of her life by the time of the molesting, was egregious. In addition, McNett committed the offense in the presence of his two young sons, who were J.R.'s half-brothers. McNett has not convinced us that his enhanced, but not maximum sentence, is inappropriate for his offense.

[18] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. McNett's criminal history is very minor, as he had only one prior conviction of misdemeanor check deception. Nevertheless, McNett had been arrested multiple times and two additional causes of action against him had been dismissed after McNett completed deferral programs through Community Corrections. Repeated contacts with the criminal justice system generally reflect poorly on the defendant's character, because such contacts suggest the defendant "has not been deterred [from further criminal behavior] even after having been subjected to the police authority of the State." *Cotto*, 829 N.E.2d at 526.

[19] McNett has not convinced us that his ten-year sentence is inappropriate for his offense or his character, as he has had repeated contacts with the criminal justice system without modifying his behavior and as he egregiously violated a position of trust when committing his offense. *See*, *e.g.*, *Norton v. State*, 137 N.E.3d 974, 989 (Ind. Ct. App. 2019) (eleven-year sentence for Level 4 felony

sexual misconduct with a minor, ordered concurrent with a four-year sentence for one Level 5 felony and consecutive to another four-year sentence for a Level 5 felony, not inappropriate in light of criminal history and victim's belief that defendant was part of her family), *reh'g denied*, *trans. denied*.

# Conclusion

[20] The trial court did not err when it admitted Officer Wagner's testimony regarding his interview of McNett at the Chesterfield Police Station because the machine's unexplained loss of the recording satisfied the equipment malfunction exception provided by Evidence Rule 617(a)(3). Neither did the trial court's findings of aggravating factors result in reversable error. Finally, McNett's ten-year sentence for Level 4 felony child molesting is not inappropriate in light of his offense and character. Accordingly, we affirm the trial court's judgment.

[21] Affirmed.

Riley, J., and Altice, J., concur.